IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| MOUSA SIYAM,<br><br>    Petitioner,<br>vs.<br><br>CONRAD M. GRABER,<br><br>    Respondent. | No.  CV 10-692-TUC-CKJ (BPV)<br><br>**REPORT AND RECOMMENDATION** |

    Pending before the Court is a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (Petition), filed on November 23, 2010. (Doc. 1) Petitioner, Mousa Siyam, alleges Respondent improperly took from him seven days of good time credit, in addition to imposing the sanctions of disciplinary segregation, loss of commissary privileges, and disciplinary transfer.  Petitioner also alleges that the disciplinary sanctions were excessive and cruel and unusual, and that the disciplinary transfer was imposed in retaliation for the request to exercise his right to present documentary evidence in his defense.

    Before the Court is the Petition (Doc. 1) and supporting memorandum (Doc. 2), Respondent's return and answer with accompanying exhibits (Doc. 13) (Answer), and Petitioner's reply (Doc. 14) (Reply) and supporting declaration (Doc. 15).

    Pursuant to the Rules of Practice of this Court**,** this matter was referred to Magistrate Judge Bernardo P. Velasco for a Report and Recommendation. (Doc. 7)

    For the reasons discussed below, the Magistrate Judge recommends that the District Court enter an order denying the Petition on the merits.

## I.   PROCEDURAL BACKGROUND

At the time Siyam filed the present Petition he was an inmate at the Federal Correctional Institute, in Safford, Arizona (FCI Safford). (Petition, p.1; Answer, Ex. 1) Siyam alleges the Bureau of Prisons's (BOP) violated his rights under the 5th and 8th Amendments to the Constitution during disciplinary hearings and sanctions while he was designated at the Satellite Camp Prison of the United States Penitentiary in Atlanta, Georgia (SCP Atlanta). *Id.* Siyam is currently serving a 97-month sentence of incarceration for Conspiracy to Distribute and Possession with Intent to Distribute 100 kilograms or more of Marijuana, and is projected to complete this sentence on February 1, 2014, via Good Conduct Time Release. (Answer, Ex. 1, Attachment 3) His Home Detention Eligibility Date is August 1, 2013. *Id.*

Petitioner filed the present Petition on November 23, 2010. Respondent filed an answer on February 1, 2011. He concedes Siyam has exhausted administrative remedies. (Doc. 13) Petitioner filed a reply and supporting declaration on February 28, 2011. (Docs. 14, 15)

## II.   DISCIPLINARY CHARGES AND PROCEEDINGS

On September 26, 2009, Officer B. Montgomery, Special Investigative Specialist (SIS) conducted a random search of Siyam's living area at USP Atlanta and discovered 4 packs of Winston cigarettes and 1 cigarette lighter located in between the bed's two mattresses. (Answer, p.2) Officer Montgomery wrote an Incident Report charging the petitioner with Possession of Anything Not Authorized, in violation of Prohibited Code 305. *Id.* When asked if the cigarettes were his, the Incident Report indicates that petitioner replied, "Yes." *Id.*

On September 27, 2009, C.S. Kellum, Lieutenant, delivered a copy of the Incident Report to the petitioner, advised Petitioner of his right to remain silent, and conducted an investigation of the incident. *Id.* When asked if he wished to make a statement, Petitioner stated, "They are not mine." *Id.*, p.3. Lieutenant Kellum concluded

- 2 -

his investigation by finding that Petitioner committed the prohibited act of Code 305, and placed Petitioner in Administrative Detention pending a Unit Disciplinary Committee (UDC) action. *Id.* On September 29, 2009, the UDC was held by the Unit Team: E. Terry, and T. Bryce. *Id.* Petitioner stated the cigarettes were not his, even though they were under his mattress. *Id.* Based on the seriousness of the charge and recommended sanctions, the UDC referred the inmate to the Disciplinary Hearing Officer (DHO) for further action. *Id.* Mr. Terry provided Petitioner with the Notice of Discipline Hearing Before the DHO and Inmate Rights At Discipline Hearing forms. *Id.*

On November 4, 2009 Vernon Neel[1], the Alternate DHO, conducted a Disciplinary Hearing. *Id.*, p.4. Neel completed the DHO report on November 12, 2009. *Id.* At the time of the hearing, the inmate was provided an opportunity to have a staff representative and witness, but the inmate declined to use either. *Id.* Petitioner made the following statements:

> He said that he was in the TV room when ISS (sic) came and told him that they had found the Cigarettes. He said: "They were to my bed and told me the (sic) he found cigarettes. I requested that fingerprints be taken and was ignored. I got told that they said I was selling them. There is o (sic) reason for me to sell them. I have money on the books. I have asthma and there is no way that I can smoke."

*Id.*

In addition to the Incident Report and Investigation, the DHO considered the photos of the cigarettes and lighter. *Id.*

The DHO found Petitioner committed the prohibited act of Possession of Anything not Authorized, Code 305. *Id.* The DHO based his findings on the "statements made by the reporting officer to the DHO, in which he stated that he

---

[1] DHO Neel has retired from the Bureau of Prisons. The DHO packet was submitted for review by Vickie Petricka, DHO for the Federal Correctional Complex, in Tucson, Arizona.

conducted a random search of your living area and located the evidence under [Petitioner's] mattress." (*Id*., Ex. 1, Attachment 4, Discipline Hearing Officer Report.) The DHO noted that Petitioner denied knowing how the cigarettes came to be under his mattress, but that he failed to provide any proof that they were not his. *Id*. The DHO gave the greater weight to the statements made by the reporting officers statement of what occurred and the physical evidence recovered. The DHO sanctioned Petitioner to a loss of seven days good time credit, 14 days of disciplinary segregation, loss of commissary privileges for three months, and a disciplinary transfer. *Id*.

## III. DISCUSSION

### A. Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction. *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000). Writ of habeas corpus relief extends to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1) & (3). A prisoner who wishes to challenge the manner, location, or conditions of a sentence's execution must bring a petition pursuant to § 2241 in the custodial court. *Hernandez v. Campbell*, 204 F.3d 861, 864 (9th Cir.2000), and must file the petition in the judicial district of the petitioner's custodian. *Brown v. United States*, 610 F.2d 672, 677 (9th Cir. 1980).

In the instant case, in Ground One, Petitioner is seeking relief with respect to disciplinary proceedings that, in part, resulted in the loss of good time credit while incarcerated at USP Atlanta. Petitioner is challenging the legality of the manner in which his sentence is being executed. Thus, Ground One is properly before this Court under 28 U.S.C. §2241.

In Grounds Two and Three, Petitioner does not challenge the fact or duration of his confinement. Habeas corpus is not available to challenge an inmate's conditions of confinement not resulting in any impact on the legality or duration of that confinement.

- 4 -

1 *See Ramirez v. Galaza*, 334 F.3d 850, 859 (9th Cir. 2003)("habeas jurisdiction is absent
2 and a [civil rights] action proper, where a successful challenge to a prison condition will
3 not necessarily shorten the prisoner's sentence"); *Crawford v. Bell*, 599 F2d 890, 891-
4 892 (9th Cir. 1979) (upholding dismissal of petition challenging conditions of
5 confinement, the Ninth Circuit noted that "the writ of habeas corpus is limited to attacks
6 upon the legality or duration of confinement);*Boyce v. Ashcroft*, 251 F.3d 911, 914 (10th
7 Cir.2001), *vacated on other grounds*, 268 F.3d 953 (10th Cir.2001) ("[P]risoners who
8 want to challenge their convictions, sentences or administrative actions which revoke
9 good-time credits, or who want to invoke other sentence-shortening procedures, must
10 petition for a writ of habeas corpus;" however those "who raise constitutional
11 challenges to other prison decisions-including transfers to administrative segregation,
12 exclusion from prison programs, or suspension of privileges, *e.g.*, conditions of
13 confinement, must proceed under Section 1983 or *Bivens*."); *see also Greenhill v.
14 Lappin*, 2010 WL 1539818, at *1 (9th Cir. 2010)(federal prisoner's claim that prison
15 officials retaliated against him by mishandling his legal mail not cognizable in habeas
16 corpus); *Blum v. Floyd*, 1997 WL 599370 at *1 (9th Cir. 1997)(petitioner's claim of
17 retaliatory transfer by prison official is properly brought under *Bivens* rather than §
18 2241); *Valenteen v. Driver*, 2009 WL 304835 at *3(N.D. W. Va 2009); *but see Bostic
19 v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989)(habeas corpus jurisdiction available for
20 prisoner's claims that he has been subjected to greater restrictions of his liberty, such
21 as disciplinary segregation, without due process of law)(citing *McCollum v. Miller*, 695
22 F.2d 1044, 1046 (7th Cir. 1982); *McNair v. McCune*, 527 F.2d 874, 875 (4th Cir. 1975).
23 *Cardenas v. Adler,* 2010 WL 2180378 (E.D.Cal. 2010) (petitioner's challenge to the
24 constitutionality of the sanction of disciplinary segregation and contention that the
25 disciplinary proceedings were the product of retaliation by prison staff cognizable in
26 habeas);
27
28

- 5 -

Petitioner alleges in Ground Two of the Petition that prison officials retaliated against Petitioner for requesting that fingerprint evidence be taken from the cigarette packs and lighter by imposing sanctions which are impermissible for a first time violation of Code 305, specifically disciplinary transfer and excessive administrative segregation. (Petition, p.5A; Doc. 2, p. 9) Petitioner alleges in Ground Three of the Petition that the sanctions imposed by the BOP were excessive and disproportionate to the severity of the alleged first-time violation, and violated his right under the Eighth Amendment against cruel and unusual punishment. Specifically, Petitioner contends that the disciplinary transfer has resulted in severe emotional distress and serious personal hardship. (Petition, pp.6-6A; Doc. 2, p. 10) The Court concludes that Petitioner is challenging only the conditions of his confinement in Grounds Two and Three of his Petition. If Petitioner were successful in this claim, it would not result in any impact on the legality or duration of Petitioner's confinement. There is no possibility that the Court could afford Petitioner any "sentence-shortening" relief, *i.e.*, relief that would affect the fact or duration of his incarceration. Where a Petitioner seeks to challenge the conditions of his confinement, his claims are cognizable in a civil rights action rather than a habeas corpus action. In the federal context, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), provides petitioners with a remedy for violation of civil rights by federal actors. Accordingly, Petitioner is not entitled to habeas corpus relief under § 2241 and these claims should be dismissed without prejudice to his filing a *Bivens* civil rights action.

  B. <u>Exhaustion</u>

Before filing a petition for writ of habeas corpus, a federal prisoner challenging any circumstance of imprisonment must first exhaust all administrative remedies. *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir.1986). The Government concedes Petitioner has exhausted his available administrative remedies. (Answer, p.5).

C.     Merits

  1.     *Ground One: Due Process Claim*

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied*, 487 U.S. 1207 (1988). "The inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* Once these *Wolff* procedural protections are followed, the only function of a federal court is to review the statement of evidence upon which the committee relied in making its findings to determine if the decision is supported by "some evidence." *Superintendent. Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1984) ("The requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board.")

Petitioner argues that he was denied his due process rights by not being allowed to present exculpatory documentary evidence, specifically, that he requested fingerprints be taken from the cigarette-packs and lighter, at Petitioner's expense. (Petition, p.4A, Doc. 2, p.3) Petitioner has a due process right to "present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Petitioner's request for fingerprint evidence, however, goes beyond the bounds of a request to compile and present documentary evidence, rather, Petitioner is requesting that he be allowed to conduct his own investigations into the offense. Furthermore, even if this were merely a request to present documentary evidence, prison officials have the necessary discretion to structure the hearing to keep it within reasonable limits by limiting an

- 7 -

1 inmates ability to compile documentary evidence. *See Id.* The Supreme Court has
2 refused to establish an "across-the-board" policy imposing a duty on a disciplinary
3 board to explain why inmates were not allowed to present witnesses or evidence. *See*
4 *Wolff, supra*; *Ponte v. Real*, 471 U.S. 491, 496 (1985). If denied the right to present
5 documentary evidence, due process requires prison officials to provide an explanation,
6 either in the administrative record or in court. *Ponte*, 471 U.S. at 497. Vickie Petricka
7 has provided a sufficient explanation for why Petitioner's request was denied.  Offer
8 Petricka stated that DHO Neel documented that Petitioner requested the cigarette-packs
9 be fingerprinted, but notes that such testing or processing is not required in an
10 administrative prison discipline hearing. Officer Petricka states that, in this case,
11 Petitioner provided no credible or verifiable evidence that the cigarettes were planted
12 in his cell to warrant the extraordinary investigative measures. Furthermore, as
13 Respondent notes in the Answer, Petitioner did not dispute the unauthorized items were
14 found in his mattress, thus, even if he had established that his fingerprints were not on
15 the unauthorized items, it would not negate the possession charge.

16       Petitioner also asserts that a confidential informant report was relied upon as
17 evidence by the DHO officer in his findings, but was withheld from Petitioner.
18 (Petition, p.4A, Doc. 2, p.4) There is no factual support for Petitioner's assertion that
19 a confidential informant was used in this case. The Court is unsure what the basis is for
20 Petitioner's assertion that a confidential report exists. Petitioner refers to Section III.E.
21 of the DHO Report. (Petition, p.4A) Section III(E) of the Disciplinary Hearing Report
22 form reads, "Confidential information was used by DHO in support of his findings, but
23 was not revealed to the inmate. The confidential information was documented in a
24 separate report. The confidential information has been (confidential informants have
25 been) determined to be reliable because:" (Answer,Ex.1,Attachment 4, DHO Report,
26 ¶ III.E.) This preliminary statement is included in the blank DHO Report form, whether
27
28

- 8 -

1  there is a confidential informant, or not.[2] The completed DHO Report in this case was
2  filled in with "N/A" (not applicable), because there was no confidential informant.
3  Other than Petitioner's reference to the preliminary statement, present on all DHO
4  Report forms, but completed only if a confidential informant is used, there is no
5  evidence that a confidential informant was used in this case.

6        Finally, Petitioner argues that he cannot be held responsible for contraband
7  found in a common area accessible by all inmates. (Petition, p.4A.; Doc. 2, p.7)
8  Petitioner describes the living area as an "open dormitory setting," and that the only
9  area to which an inmate can reasonably deny the access of other inmates is his locker,
10 as it has a personal lock. (Reply, 4) Petitioner asserts that the mattresses on his bed are
11 in a common area accessible by all inmates. *Id*. Specifically, Petitioner alleges his
12 living area is in one of eight units, each unit having 38 two-person cubes each without
13 doors. (Reply, p.4) The doors to the units are unlocked and any inmate can access any
14 cube or bed at any time. *Id*. Respondents assert simply that the contraband items were
15 found in the "common area of [Petitioner's] cube, in between two of his mattress (sic)
16 which is in his access and control" but that Petitioner's "cube and the mattresses where
17 the contraband items were located are not common areas of the housing unit."
18 (Answer, p.9) Respondent defines a "common area" as "a television room, a shower or
19 *any other area accessible by all inmates in that particular housing unit,*" *id*.(emphasis
20 added), but makes no attempt to explain why the dormitory style cubes in this instance
21 are either 1) not accessible by all inmates as alleged by Petitioner, or 2) "accessible by
22 all inmates in that particular housing unit" but not a "common area" as Respondent has
23 defined the term.

---

27      [2] See BOP Form BP-A0304, found at BOP's website, www.bop.gov.

1    Petitioner maintains that the fair and logical definition of the area he is
2 required to keep free of contraband, under prison guidelines, should be the area that
3 an inmate can control and is not commonly accessible by other inmates.
4    In the absence of direct evidence pointing to a defendant's guilt, the "some
5 evidence" standard of *Hill* may be satisfied by application of the constructive
6 possession doctrine. *See, e.g., Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir.
7 2001) (Where "the only evidence linking Broussard to the bolt cutters is that they
8 were found in an area in which he worked, but to which approximately one hundred
9 inmates had access," the "some evidence" standard was not met.); *but see Hamilton
10 v. O'Leary*, 976 F.2d 341, 346 (7th Cir. 1992) (Where weapons were found in a cell
11 that housed the plaintiff and three other inmates, the "some evidence"standard was
12 met.).
13    Siyam argues the DHO's decision violated due process because his bed is in a
14 common area accessible by all inmates. *See* (Petition, p. 4A; Doc. 2, p. 7) The court
15 does not agree. The DHO did not rely on a constructive possession theory to support
16 his findings.  This case is different from *Broussard* and *Hamilton*, because the
17 petitioners in those cases had equal access to the common area, shared with other
18 inmates, whereas in this case, according to Petitioner's uncontested allegations,
19 inmates may have some access to Petitioner's living area, they do not have the same
20 degree of access and control that Petitioner exercises over his living area and his
21 own mattress. The DHO found Siyam possessed the cigarettes and lighter, not
22 because he lived in the dormitory in which the weapons were found, but because the
23 cigarettes were found in Siyam's cell, under a mattress which Petitioner admitted
24 was his. (Answer, Ex.1, Attachment 4) These facts directly connected Siyam to the
25 cigarettes. The DHO relied on sufficient reliable evidence to satisfy the "some
26 evidence" test. As the Regional Director noted in the response to Petitioner's
27 grievance of this issue, an inmate has the responsibility to keep his area free of
28

contraband. (Petition, Exhibits, Regional Administrative Remedy Appeal No. 567581-R1, Response); *see also* 28 C.F.R. § 541.12. "Some evidence," therefore, supports the DHO's conclusion. Accordingly, the DHO did not need to rely on a theory of constructive possession. That there is evidence suggesting Siyam's innocence is irrelevant. Due process only requires that there be "some evidence" supporting the disciplinary decision. It does not require that the supporting evidence outweigh the evidence to the contrary. *Hill*, 472 U.S. at 455.

The petition should be denied.

## IV. RECOMMENDATION

The Magistrate Judge recommends that the District Court enter an order:

(1) DISMISSING Grounds Two and Three of the Petition without prejudice;

(2) DISMISSING Ground One with prejudice.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within fourteen (14) days of being served with a copy of the Report and Recommendation. If objections are not timely filed, they may be deemed waived. The parties are advised that any objections filed are to be identified with the following case number: **No. CV-10-692-TUC-CKJ.**

The Clerk is DIRECTED to send a copy of this Report and Recommendation to the Petitioner and the Respondent.

DATED this 17th day of June, 2011.

_____
Bernardo P. Velasco
United States Magistrate Judge

- 11 -